[S. F. No. 16770.   In Bank.   Dec. 10, 1942.]

HENRIETTA BECCUTI et al., Respondents, v. COLOMBO BAKING. COMPANY (a Corporation) et al., Defendants; LOUIS J. LERCARI as Executor, etc., et al., Appellants.

Hugo D. Newhouse and Herbert Pothier for Appellants.

George K. Ford and Robert E. Hatch for Respondents.

EDMONDS, J.—The statute considered in *Butcher* v. *Brouwer, ante,* p. 354 [132 P.2d 205], must again be construed in determining the validity of an order directing that a judgment, upon which no execution was issued during a period of 15 years after its entry, be now enforced.

Giacomo Lercari and two other persons were sued in 1923 in an action brought on a promissory note.   Judgment for

$1,032.74 was entered against them in 1927. Since 1940, the respondents, Henrietta Beccuti and Rosa Canelli, have been the substituted plaintiffs in that action and the successors in interest of the judgment creditor.

Lercari died in 1940. During the following year, the respondents procured an order directing the executors of Lercari's estate to show cause why the judgment should not be enforced. No writ of execution had theretofore been issued upon it. By an affidavit presented in support of the motion, counsel for the respondent Canelli averred that the judgment is wholly unsatisfied and unpaid and stated the reasons for the plaintiff's failure to obtain a writ.

Since the entry of the judgment, he said, due and frequent efforts to collect it have met with no success. A full and complete investigation was made by and on behalf of the plaintiff concerning its collectibility, including the solvency and whereabouts of the various defendants. Inquiries were made at the last known addresses of the defendants and public records were consulted. From the reports received, the plaintiff and her attorneys concluded that it was uncollectible and no writ of execution was procured. "At all times from the date of said judgment until the death of defendant Lercari as hereinafter alleged, said parties were of the opinion, based upon all information they could procure, that to obtain executions or attempt to levy the same, would have been idle and unavailing." But as the "affiant is now informed and believes," although for the period of at least five years after the judgment was rendered Lercari had no assets, later he "acquired certain assets which he concealed in order to prevent the same from being subjected to the payment of said judgment."

By a counteraffidavit, Louis J. Lercari, the son of Giacomo Lercari and a coexecutor of his estate, stated that prior to the entry of the judgment, and until the date of his death, his father owned of record unencumbered real property, conservatively valued at $20,000, located in San Francisco, where the judgment was rendered. One parcel of real estate was improved with the building in which he conducted a grocery business and since 1925 he occupied an apartment on the second floor of this building. The city directories and the telephone directories from 1925 to the date of his death

showed him as living at this address. Until 1935, the judgment debtor was also the sole owner of the business which was conducted by him under the name "G. Lercari, Groceries." At that time, he gave a one-half interest in it to the affiant. The son also averred that his father had owned trucks, which were used in his business, and pleasure automobiles, all of which were registered in his name with the Motor Vehicle Department of the state. Furthermore, according to the affidavit, at the time of the rendition of the judgment until the date of his death, the judgment debtor owned stocks in corporations listed on the San Francisco Stock Exchange, the total value of which greatly exceeded the amount of the judgment. In addition, the son asserted, the records of the tax collector's office in San Francisco for the years from 1921 to 1940, have shown that he owned property in excess of the amount of the judgment and the interest and costs thereon.

By an additional counteraffidavit, it was shown that the city directories of San Francisco issued in the lifetime of Lercari since 1925 included his name with the address of his place of business, or the entrance to the upper floor of the same building. Only telephone directories from the year 1929 were available to the affiant, he stated, but in each of them, up to the date of the judgment debtor's death, his name was listed with his business address.

At the hearing upon the order to show cause, counsel who made the affidavit on behalf of the respondents admitted that he had no personal knowledge concerning the collectibility of the judgment or the solvency of the defendant Lercari during his lifetime. He explained that other counsel had brought the action on behalf of the respondent Beccuti, as administratrix of her husband's estate. Although he had been advised of the progress of the case because of his representation of the respondent Canelli, who was an heir of the deceased, he made no investigation concerning the debtor until after the decree of distribution in 1939, when an interest in the judgment was distributed to his client. The attorney who is said to have made inquiries concerning Lercari's property at the time of the hearing was "out of town, and unavailable." And the respondents stated to the court that they would not controvert the facts stated in the affidavit of Lercari.

Under section 685 of the Code of Civil Procedure, as amended (Stats. 1933, p. 2499), a judgment creditor seeking to enforce his judgment after the lapse of five years from the entry of judgment must, by means of an affidavit, present reasons why he has not satisfied his judgment during the five years in which he may obtain a writ of execution as a matter of right. (§ 681, Code Civ. Proc.) The affidavit must show that he exercised due diligence, under the circumstances of his particular case, in attempting to enforce his judgment during that period. (*Butcher* v. *Brouwer, supra.*) Whether he has exercised such diligence is, by the express provisions of the statute, for the trial court to determine in its discretion. And an order made under such authority will not be disturbed upon appeal unless it clearly appears that the determination constitutes an abuse of discretion. (*Butcher* v. *Brouwer, supra.*) But if the facts show of a certainty that, had the judgment creditor exercised even slight diligence in making inquiry concerning the circumstances of the judgment debtor, he would have discovered property subject to execution, the exercise of sound discretion requires the court to deny the motion.

An examination of the record in the present proceeding, shows that a search of the tax assessor's and tax collector's records in any of the five years following the entry of the judgment, would have disclosed the existence of property owned by the judgment debtor of a value many times in excess of the amount of the judgment. The judgment debtor owned the property in which he lived and maintained his grocery business. He owned trucks used in his business and also pleasure automobiles, all of which were registered in his name in the state Department of Motor Vehicles. His credit record was good. And his name and address appeared in both the city directory and the telephone directory for each of the five years.

Under these circumstances it is apparent that a resort to any of the customary sources of credit information would have disclosed property of the judgment debtor, and if the slightest effort had been made by the creditor within five years after the rendition of the judgment to locate property belonging to Lercari, much more in value than the amount necessary to satisfy it would have been discovered. Accord-

ingly, the trial court abused its discretion in making the order appealed from.

The order is reversed.

Gibson, C. J., Shenk, J., Curtis, J., Carter, J., Traynor, J., Schauer, J. pro tem., concurred.

Respondents' petition for a rehearing was denied **January 7, 1943.**