[Civ. No. 21499. Second Dist., Div. One. May 3, 1956.]

KARL O. URLAND, Appellant, v. FRED HAYWARD FRENCH et al., Defendants; LOS ANGELES TRANSIT LINES (a Corporation), Respondent.

Robertson, Harney, Drummond & Dorsey, Robertson, Harney & Drummond and David M. Harney for Appellant.

Trippet, Newcomer, Yoakum & Thomas, Henry R. Thomas, Wayne Veatch, Henry F. Walker and Paul J. Clarrinon for Respondent.

FOURT, J.—This is an appeal by the plaintiff from a judgment notwithstanding the verdict rendered in favor of defendant Los Angeles Transit Lines, in an action to recover damages for personal injuries sustained in an automobile accident.

The action was originally filed against Fred French, Harvey French, Marie Elizabeth Whitmore and Los Angeles Transit Lines. Fred and Harvey French and their liability insurance carrier, through a covenant not to sue, settled with appellant by payment of $30,000, although the paying parties denied any liability and appellant asserted liability on the part of respondent.

The case was tried against the defendants Whitmore and Los Angeles Transit Lines, appellant recovering a verdict in his favor against both defendants. This verdict was later set aside upon motions for new trial, as to respondent upon the grounds of insufficiency of the evidence and of newly discovered evidence, and as to Whitmore upon the grounds of insufficiency of the evidence.

The case was retried and appellant recovered a verdict against Whitmore and respondent in the sum of $40,000, less the $30,000 theretofore paid on the covenant not to sue. Respondent moved for judgment notwithstanding the verdict and defendant Whitmore moved for a new trial. Both motions were granted. ▮▮ The appellant has appealed from (1) the order granting defendant Whitmore's motion for a new trial (which has been abandoned by appellant) ; (2) the order granting respondent's motion for judgment notwithstanding the verdict (which is not appealable—*Scott* v. *George A. Fuller Co.,* 41 Cal.App.2d 501, 504 [107 P.2d 55] ) ; (3) the judgment notwithstanding the verdict "signed . . . on June 27, 1955"; (4) "the final judgment entered in the above entitled action,"

and (5) refusal to vacate the judgment notwithstanding the verdict and to vacate the order granting the motion for a new trial (which is not appealable—*Bixby* v. *California Trust Co.,* 33 Cal.2d 495, 499 [202 P.2d 1018] ; *Kellow* v. *Lane,* 102 Cal. App.2d 821, 826 [228 P.2d 872].)

Appellant contends that (1) the trial court did not have power to grant respondent's motion for judgment notwithstanding the verdict made after entry of judgment since such motion was not made in the alternative with a motion for new trial as provided in section 629, Code of Civil Procedure, and (2) as a matter of law, the judgment notwithstanding the verdict was improperly granted.

The accident occurred about 6:35 in the evening of February 11, 1953, at the signal-controlled intersection of Exposition Boulevard, Vermont Avenue and McClintock, in the city of Los Angeles. It was dark at the time but the intersection was well lighted. Exposition, which runs in an easterly-westerly direction, is paved to the east of Vermont from its north to its south curbs. To the west of Vermont, Exposition has a north portion, for westbound traffic, and a south portion, for eastbound traffic, divided by a private right-of-way of the Pacific Electric Railway. The north portion is 30 feet wide from the north curb of the right-of-way to the north curb of Exposition and has three lanes, one for parking and two traffic lanes. The east end of the right-of-way (also referred to as the "island") is almost even with the west curbline of Vermont, and has a sidewalk upon it. A little west of the sidewalk and on the northerly portion of the right-of-way is a flagman's shack or shelter. Vermont, which runs north and south, has streetcar tracks in the center of its paved street.

At the time of the accident, appellant was on the island on the east end of the right-of-way. Musselwhite, a flagman employed by respondent, was stationed at the intersection to direct and control the movement of the respondent's streetcars, including the one in question, into and through the intersection. The flagman's eyesight was considerably impaired, being blind in one eye and the vision in the other being poor. Respondent's streetcar was being operated by one William Bacon in a southerly direction on Vermont. Defendant Whitmore was driving her automobile south on Vermont, to the right of the streetcar. Both the streetcar and defendant Whitmore were stopped at the intersection by the red light. Fred French was driving his automobile west on Exposition in the second traffic lane from the north curb. It

was his intention to go in a straight line across Vermont and into the northernmost traffic lane of Exposition west of Vermont. He entered the intersection on the amber light.

When the light turned green for southbound traffic on Vermont, the flagman gave Bacon a clearance signal to move into the intersection. He did not pay any attention to automobile traffic and did not observe the French automobile until after he gave the clearance signal. The motorman acknowledged this signal and proceeded into the intersection. He could not, pursuant to the rules of the respondent, proceed without such a clearance from the flagman. He first saw the French automobile in the intersection after he acknowledged the flagman's clearance signal.

Just after the streetcar started forward, defendant Whitmore moved into the intersection. She could not see the automobile of Mr. French, nor could he see her, because of the position of the streetcar between them. Mr. French swerved to the southwest, toward the appellant and around the front of the streetcar, and collided with the Whitmore automobile. Mr. French's car went out of control and struck appellant, throwing him 15 feet in the air and 65 feet down the street. The point of impact was established as 21 feet south of the north curb and 14 feet east of the west curb. At the time the two automobiles collided, the Whitmore automobile was approximately even with the front of the streetcar.

The rule with respect to the granting of a motion for a judgment notwithstanding the verdict is aptly stated in *Hunt* v. *United Bank & Trust Co.*, 210 Cal. 108, at pages 117-118 [291 P. 184], as follows: "Unless it can be said that, as a matter of law, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that an appellate court would be impelled to reverse it upon appeal or a trial court set it aside, a court is not justified in taking a case from a jury and itself rendering the decision. (*Umsted* v. *Scofield Eng. Co.*, 203 Cal. 224 [263 P. 799].) Such a motion is in the nature of a demurrer to the evidence, and is governed by practically the same rules, and concedes as true the evidence on behalf of the adverse party, with all fair and reasonable inferences to be deduced therefrom. (*Butler-Veitch, Inc.* v. *Barnard*, 77 Cal.App. 709 [247 P. 597].) Even though a court might be justified in granting a new trial it would not be justified in directing a verdict on the same evidence. (*Estate of Caspar*, 172 Cal.

147 [155 P. 631].) The power of a court in passing upon such motions is strictly limited. It has no power to weigh the evidence, but is bound to view it in the most favorable light in support of the verdict. The right of a court to direct a verdict is the same as the right of a court to grant a nonsuit. This can be done only when, disregarding conflicting evidence and giving plaintiffs' evidence all the value to which it is legally entitled, including every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such verdict was given. (*Newson* v. *Hawley*, 205 Cal. 188 [270 P. 364].) If, in the opinion of the court, the evidence is unreliable, it is its duty to grant a new trial, and it may grant such trial even where there is substantial evidence to sustain the verdict, if it believes that the evidence preponderates against the verdict.''

Fred French testified, his testimony having been introduced by way of deposition, that he entered the intersection on the amber light; that he first saw the Whitmore automobile just as he was passing in front of the streetcar; that it was proceeding south on the right side of the streetcar, about 15 miles per hour, and the front of the car was about parallel with the front of the streetcar.

Officer Floyd, who was an eyewitness to the accident, testified that at the time of the accident he was driving south on Vermont and brought his car to a stop behind and partially to the right of the Whitmore automobile; that the streetcar and the Whitmore automobile started forward ''from one to three seconds, perhaps two seconds,'' after the signal had turned green; that after the streetcar started forward, it came to a stop 10 to 15 feet from where he had first seen it.

Mrs. Whitmore testified that the streetcar started to move a second or two before she did; that she had just reached the front of the streetcar as the westbound automobile came around it and struck the front of her car; that when the collision occurred, Mr. French was swerving around the streetcar.

Respondent asserts that the motorman's operation of the streetcar was neither negligent nor a proximate cause of the plaintiff's injuries; that section 476 of the Vehicle Code did not prohibit the motorman from proceeding into the intersection but required only that he yield the right of way to other vehicles lawfully within the intersection; that there

was no evidence that the streetcar came in contact with either of the automobiles involved in the collision.

Both the question of negligence and that of proximate cause were questions of fact for the determination of the jury. (*Hilyar* v. *Union Ice Co.*, 45 Cal.2d 30, 38 [286 P.2d 21]; *Smith* v. *Schwartz*, 14 Cal.App.2d 160, 164 [57 P.2d 1386]; see also cases cited in West's Cal. Dig., vol. 34, Negligence, p. 287, et seq., p. 309, et seq.)

When an injury results from the concurrent effect of two separate wrongful acts, each is a proximate cause of the injury, and neither can operate as an efficient intervening cause with regard to the other. The fact that neither party might have reasonably anticipated the occurrence of the other concurrent cause does not shield from liability him whose own negligence was one of the causes of the injury. (*Taylor* v. *Oakland Scavenger Co.*, 17 Cal.2d 594, 602 [110 P.2d 1044].)

From the evidence adduced the jury could have found, as it evidently did, that Mr. French entered the intersection on the amber light and was lawfully in the intersection at the time respondent's streetcar started forward; that Mr. French was compelled to swerve around the front of the streetcar, toward plaintiff, by the failure of respondent's motorman to yield the right of way and that such failure was a proximate cause of plaintiff's injuries.

As was said in *Gray* v. *Southern Pac. Co.*, 23 Cal.2d 632, 646 [145 P.2d 561]: " 'It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. (Citing cases.) That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.' "

The question of negligence and proximate cause being

one for the determination of the jury, and there being substantial evidence, considered in the light most favorable to the appellant, upon which the jury could conclude that respondent was negligent and that its negligence proximately contributed to the happening of the accident, it cannot be said as a matter of law that the evidence did not support the verdict.

In view of our conclusion it is unnecessary to consider other points raised by appellant.

The appeal from the order granting defendant Whitmore's motion for a new trial, having been abandoned by appellant, is dismissed; the appeals from the order granting respondent's motion for judgment notwithstanding the verdict and from the refusal to vacate the judgment notwithstanding the verdict and to vacate the order granting the motion for a new trial, being nonappealable, are dismissed.

The judgment is reversed with directions to the trial court to enter judgment on the verdict.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied May 21, 1956, and respondent's petition for a hearing by the Supreme Court was denied June 27, 1956.